ERICK OLSON v. TRINITY LODGE NO. 282, A. F. & A. M., AND ANOTHER.[1]

April 23, 1948.

No. 34,610.

[1]Reported in 32 N. W. (2d) 255.

*R. Vern Eckman,* for relators.

*John H. Louisell* and *Dancer, Montague, Applequist, Lyons & Spang,* for respondent.

MATSON, JUSTICE.

Certiorari to review an order of the industrial commission awarding compensation and medical benefits to respondent.

At the time of his injury, respondent was regularly employed as a carpenter at a sash and door factory in Duluth. In addition thereto, he was employed as a part-time janitor by Trinity Lodge No. 282, A. F. & A. M. The janitorial work involved taking care of the screens and storm windows, tending the furnace, and shoveling and sanding the sidewalks of the lodge building, which is located about four blocks from the sash and door factory. As compensation for

this part-time janitorial work, respondent was given, instead of a monetary consideration, a rent-free room in the lodge building, where he made his home.

Each winter morning respondent would fill the furnace stoker shortly before leaving for work at the sash and door plant, where his hours were from eight in the morning to five in the afternoon. As a rule, the furnace required no further attention until he returned to the lodge at about 5:15 in the evening, although in extremely cold weather he would return to the lodge at noon and refill the stoker and remove clinkers from the furnace. If there had been snow, respondent would shovel and sand the sidewalk in the morning or evening as the circumstances required.

On January 31, 1946, at about ten minutes after five in the evening, respondent was returning to the lodge after his day's work at the sash and door plant. As he approached the front entrance of the lodge he fell and broke his hip. The fall occurred after he had turned off the public sidewalk and had entered upon a concrete walk leading across the lodge front yard from the public sidewalk to the front entrance of the lodge. The evidence reasonably supports an inference that the immediate cause of the fall was an accumulation of ice and snow on that walk. Respondent testified that he had spread sand on it early that morning, but that the wind had blown it away. In keeping with his usual custom, it was his intention to go to his room to take off his mackinaw and then proceed at once to the basement to tend the furnace.

1. The sole issue presented is raised by relators' contention that respondent's injury did not arise out of and in the course of his employment. M. S. A. 176.01, subd. 11, provides:

"Without otherwise affecting either the meaning or interpretation of the abridged clause 'personal injuries arising out of and in the course of employment,' it is hereby declared:

"Not to cover workmen except while engaged *in, on, or about the premises* where their services are being performed, or where their services require their presence as a part of such service, at the time

of the injury, and *during the hours of service* as such workmen; * * *." (Italics supplied.)

A restricted or narrow construction is not to be applied to this section. In recognition of the remedial purpose of the workmen's compensation act, we have repeatedly emphasized and applied to it a broad and liberal construction. Simonson v. Knight, 174 Minn. 491, 219 N. W. 869; Le Bar v. Ewald Bros. Dairy, 217 Minn. 16, 13 N. W. (2d) 729; Locke v. County of Steele, 223 Minn. 464, 27 N. W. (2d) 285; 6 Dunnell, Dig. & Supp. § 10385. This policy of liberal construction is not to be frittered away by a narrow application of the doctrine of *stare decisis*. Whether an injury to a workman has arisen out of and in the course of his employment must be determined, in the light of the broad remedial purpose of the act, according to the varying circumstances of each case. Simonson v. Knight, *supra*.

2. The phrase "arising out of" the employment expresses the factor of origin, source, or contribution rather than cause in the sense of being proximate or direct. Compensation acts are *sui generis*, and care must be taken not to defeat their purpose by applying, through long judicial habit, concepts belonging to fundamentally different fields of litigation. Hanson v. Robitshek-Schneider Co. 209 Minn. 596, 297 N. W. 19; Horovitz, Current Trends in Workmen's Compensation, pp. 509-511. The standard of origin or source as a contributing factor obviously goes far beyond the restrictive limitations of the tort concept of proximate cause. The Massachusetts supreme court in Caswell's Case, 305 Mass. 500, 502, 26 N. E. (2d) 328, 330, rejected its earlier restrictive definitions and said:

"* * * An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects."

The companion phrase "in the course of" employment refers to the factors of *time* and *place*. State ex rel. Duluth B. & M. Co. v. District Court, 129 Minn. 176, 151 N. W. 912; Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290.

3. In respect to the elements of *time* and *place,* we come to a consideration of whether respondent was injured "in the course of" his employment. He was pursuing the proper and regular route to the scene of his labors. At the moment of his injury, he had reached not merely the premises of his employer, but also a portion of those premises which required his presence in the performance of his janitorial service. M. S. A. 176.01, subd. 11. He fell on the very sidewalk that he had sanded in the morning. His injury occurred in the zone of ingress to the building, and this zone comprised a part of the place or area of his employment. In this respect, we have here a stronger case than that of Simonson v. Knight, 174 Minn. 491, 219 N. W. 869, where the employe was injured in an area of egress not included within the portion of the premises where she actually performed her duties, but which we held was, nevertheless, a part of the working premises. We have likewise a stronger case than that of Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290, where we held that the employe was injured upon the working premises although her injury occurred in a different portion of the building from that where she actually performed her duties. Clearly, as to the element of place, respondent's injury occurred in the course of his employment.

Relators, however, emphasize the element of *time,* and allege that the accident did not occur during the "hours of service" as required by M. S. A. 176.01, subd. 11. Respondent, they say, "was not doing any work for the employer at the time," but was only going to his room. We find no merit in this contention. The term "hours of service" must not be construed so narrowly as to include only that time for which the worker is paid or only those moments which he actually spends at a shovel, machine, or workbench. An injury to a workman may arise out of and in the course of his employment even if he is not actually working at the time of his injury. Simonson v. Knight, 174 Minn. 491, 219 N. W. 869; Stacy's Case, 225 Mass. 174, 114 N. E. 206. The statutory "hours of service" during which the injury must occur in order to fall within the phrase "in the course of" employment include the period required for the reasonably

prompt egress and ingress of the workman while still upon the immediate premises. Simonson v. Knight, *supra;* Lienau v. N. W. Tel. Exch. Co. 151 Minn. 258, 186 N. W. 945. If the employe receives injuries after he has reached the working premises and while he is proceeding to a particular place of employment within a reasonable time before the actual commencement of his hours of service, his injuries arise out of and in the course of his employment. Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290; 15 Minn. L. Rev. 795.

4-5. We come now to what relators no doubt consider the real nub of their case. Did respondent's injuries arise out of his employment? Respondent said he was first going to his room, which he considered his home, to dispose of his lunch bucket and to take off his coat before he actually tended the furnace. In this respect, was he engaged in his own personal and individual purposes so as to exclude his employment as a contributory factor or source of his injuries? We think not. In this northern climate, it is obvious that on the last day of January the furnace, which had not been fixed since that morning, required prompt attention when respondent arrived shortly after five o'clock in the afternoon. The major purpose of his immediate return to the lodge building was undoubtedly to tend the furnace. A minor motive or secondary purpose was to enjoy the shelter and comfort of his room. If a movement on the part of an employe is undertaken from a mixture of motives, the major motive or dominant purpose thereof, as a general rule, controls in determining whether an injury sustained in the course of such movement arises out of and in the course of his employment. 1 Campbell, Workmen's Compensation, § 188. Cf. Loucks v. Reynolds Tobacco Co. 188 Minn. 182, 246 N. W. 893. We also note that the act of going to his room to put away his mackinaw before actually firing the furnace was incidental to his employment. An act is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. See, Rautio v. International Harvester Co. 180 Minn. 400, 405, 231 N. W. 214, 216. Such an act is related to and has its origin in the immediate pur-

pose of the employment and is not subordinate to any personal interest of the workman. By contrast, in Brusven v. Ballord, 217 Minn. 502, 14 N. W. (2d) 861, we have an example of an act that did not have its origin in a risk connected with the employment and did not flow from that source as a rational consequence. An employe who has arrived on the premises and who, preparatory to the actual commencement of work, is injured in going to a dressing room or locker to dispose of his street clothes sustains such injury as an incident of his employment, and it is compensable. See, Corpora v. Kansas City Public Service Co. 129 Kan. 690, 284 P. 818; Cunningham v. Metzger, 258 Ill. App. 150. It is immaterial that here respondent's personal room, located on the working premises, was used as a dressing room or locker. Obviously, it was likewise immaterial whether respondent intended to go directly to the furnace or to stop first at his room to remove his coat.

6. Relators assert that respondent's injuries did not arise out of the employment on the further ground that the hazard from which the accident resulted was not "peculiar to the work," but was "common to the neighborhood." In other words, the cause of the accident being an icy sidewalk, it had no relation to respondent's employment as a janitor, but was a risk to which all persons passing over the walk were exposed. Caution must be used in applying the words "peculiar to the work" so that they do not become a mere verbal shield against liability. Horovitz, Workmen's Compensation, p. 104. A hazard which is common to the neighborhood may nevertheless become so localized and peculiar to the place and nature of the employment that an employe is necessarily exposed to a different and greater risk than if he had been pursuing his ordinary personal affairs, and as a result any injury sustained therefrom is incidental to the employment and compensable. Hanson v. Robitshek-Schneider Co. 209 Minn. 596, 297 N. W. 19; Corcoran v. Teamsters & Chauffeurs Joint Council, 209 Minn. 289, 297 N. W. 4; Simonson v. Knight, 174 Minn. 491, 219 N. W. 869. In actual application, with respect to hazards growing out of and incidental to the employment, this court, *as revealed by the above decisions* and in keeping with trends

in other jurisdictions, has attached little significance to the fact that the risk was otherwise common to the community or neighborhood at large. See, Eagle River B. & S. Co. v. Industrial Comm. 199 Wis. 192, 225 N. W. 690; Matter of Katz v. Kadans & Co. 232 N. Y. 420, 134 N. E. 330; Caswell's Case, 305 Mass. 500, 26 N. E. (2d) 328; Wales v. Lambton and Hetton Collieries [1917] 86 L. J. K. B. 1346; Annotation, 49 A. L. R. 439.

In the instant case, respondent, as an incident and as an obligation of his employment, was exposed to the risk of being upon an icy sidewalk constituting a part of the working premises. It is immaterial that other employes or lodge members in passing over the walk were likewise exposed to possible injury. The order of the industrial commission is affirmed.

Respondent is allowed $250 attorneys' fees and costs in this court. Affirmed.

