# HELEN YEAGER v. JAMES W. CHAPMAN AND ANOTHER.[1]

January 19, 1951.

No. 35,278.

[1]Reported in 45 N. W. (2d) 776.

2

*John J. Sexton,* for appellants.

*Seifert, Krahmer & Johnson,* for respondent.

MATSON, JUSTICE.

Defendants appeal from an order denying their motion for judgment notwithstanding the verdict or a new trial.

Plaintiff's action is for the recovery of damages for personal injuries sustained when she fell just inside the street entrance door of a cafe which defendants operated as a part of the Augusta Hotel in Fairmont. Defendants' hotel is located at the right-angle intersection of Blue Earth avenue and Park street. The cafe occupies the corner space, so that it fronts to the east on Park street and to the south on Blue Earth avenue. On Park street immediately to the north and rear of the cafe is the kitchen. Immediately west of the cafe and fronting on Blue Earth avenue is the hotel lobby. There are two outside doors on Blue Earth avenue; one leads into the cafe and the other leads into the hotel lobby. The cafe may also be entered through a door leading from the lobby. We are primarily concerned with the outside cafe entrance, which is equipped with a vestibule. The outer vestibule door at the time of the accident had a screen which extended from the top more than halfway down. The inner vestibule door, which had a glass pane and which led directly into the cafe, was located 38 inches distant from the outer door. The concrete floor of the vestibule sloped toward the street. The cafe floor was covered with heavy linoleum, and just in front of the door leading from the vestibule the linoleum was worn "all the way through."

At the time of her injuries, plaintiff was, and had been for several years prior thereto, regularly employed as a cook in the cafe kitchen. Customarily, she commenced work at 4 a. m. and worked until 1:30 p. m., returning again at 5 p. m. She was paid on an hourly basis.

Two days before the accident, the linoleum, inclusive of the worn spot in front of the door, was treated with plastic wax, a product which gave it a high gloss and made it impervious to water.

4

On August 9, 1948, the day of the accident, when plaintiff left the cafe at 1:30 p. m. for her home, it was raining. She returned to enter the cafe through the vestibule entrance at 4 p. m., one hour earlier than was customary. It was then raining. Although the rain was not then coming directly into the cafe through the screen in the outer vestibule door, the sidewalks were wet. The cafe floor linoleum, inclusive of the worn spot, was covered with water over an area of about four or five feet directly in front of the vestibule door. As plaintiff passed through the vestibule, she stepped on the floor area just inside the door. As she did so, both feet went out from under her. As a result of her fall, she broke an arm. Her uniform became "all wet" from contact with the wet floor. She testified that before she fell she did not notice, because of the glossy and shiny condition of the waxed floor, that it was covered with water. The water, she said, made the waxed linoleum very slippery.

When both parties rested, defendants moved for a dismissal of the action with prejudice on the ground that plaintiff's exclusive remedy was under the workmen's compensation act. Upon denial of this motion, defendants moved to amend their answer to allege that if plaintiff was not upon the premises by reason of her employment she was not there by invitation of defendants and was not there as an invitee or for any purpose other than that of her employment. This motion, and also a later motion for a directed verdict, was denied. After a verdict for plaintiff, defendants made a blended motion for judgment notwithstanding the verdict or a new trial upon the grounds:

(1) That plaintiff as a matter of law sustained her injuries in the course of her employment and that her only remedy was under the workmen's compensation act.

(2) That negligence by defendants had not been shown.

(3) That plaintiff was guilty of contributory negligence.

(4) That plaintiff had assumed the risks and hazards from which her injury arose.

(5) That the trial court erred in excluding from evidence a

written accident report signed by plaintiff, which was procured by an insurance investigator within 30 days after the accident, on the sole ground that no copy thereof was given to plaintiff within 30 days thereafter as required by M. S. A. 602.01.

(6) That the court erred in denying defendants' motion to amend their answer to allege that plaintiff was not upon the premises as an invitee but solely because of her employment.

The motion was denied, and defendants appeal.

■ A motion for the dismissal with prejudice of an action for damages for personal injuries without submission to the jury, or for a directed verdict, or for judgment notwithstanding the verdict, on the ground that the evidence as a matter of law shows that plaintiff's exclusive remedy is under the workmen's compensation act, accepts the view of the evidence most favorable to plaintiff. The evidence as to coverage or noncoverage under the workmen's compensation act is to be examined in the light of the two companion phrases of § 176.02, namely, *"arising out of* and *in the course of* the * * * employment."* (Italics supplied.)

"* * * An injury arises out of the employment if it arises out of the nature, conditions, obligations or *incidents* of the employment; in other words, out of the employment looked at in any of its aspects."[2] (Italics supplied.)

The other phrase, *in the course of,* refers to factors of *time* and *place.*[3] Here, the element of *time* becomes important. This is further emphasized by § 176.01, subd. 11, which specifies that the workmen's compensation act shall not cover workmen "except * * * during the hours of service as such workmen." As already noted, plaintiff customarily worked from 4 a. m. until 1:30 p. m. She would usually return to work again at 5 p. m., unless food was to

[2]Quoted in Olson v. Trinity Lodge, 226 Minn. 141, 144, 32 N. W. (2d) 255, 257, from Caswell's Case, 305 Mass. 500, 502, 26 N. E. (2d) 328, 330.

[3]Olson v. Trinity Lodge, 226 Minn. 141, 32 N. W. (2d) 255; State ex rel. Duluth B. & M. Co. v. District Court, 129 Minn. 176, 151 N. W. 912; Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290.

be prepared for an evening banquet, when she would report for duty earlier. There was no banquet that day. She admitted that during that week she had been working part of the shift of another cook who was on vacation. Plaintiff testified definitely, however, that on the day of the accident she had no occasion to return to work before 5 p. m., but that she went to the cafe a whole hour earlier for the sole purpose of making a hairdressing appointment with Evelyn Yonke, a beautician, whom she expected to find at the cafe having her customary afternoon lunch. She declared that if she had found Evelyn in the cafe she would have made an appointment with her, visited with her for a while and enjoyed a cup of coffee with her, and that thereafter she would have gone to the cafe kitchen to report for work at 5 p. m. On the other hand, if she had not found Evelyn, she would have retraced her steps to the street and gone to make her appointment at Evelyn's beauty shop, which was only about 100 feet from the hotel. In any event, she would not have returned to her home after making her appointment, but would have reported to her work, where she was due at 5 p. m. An insurance investigator, who interviewed her shortly after the accident, testified that she told him that when the accident occurred she was hurrying because she had to be at work at 4 p. m. Did the trial court err in denying defendants' successive motions? If the trial court accepted plaintiff's testimony as true, as it could do in taking the view of the evidence most favorable to her, it would follow that plaintiff came to the cafe an hour earlier for the purpose of taking care of a personal mission. If she had not found Evelyn, she would have made her exit to go to the beauty shop. What if the fall had taken place as she was making her exit? Would not the accident then have occurred outside her employment? Furthermore, her personal mission called for her appearance at the cafe at 4 p. m., but her employment did not require her presence until an hour later. (See, §§ 176.01, subd. 11, and 176.02.) *Time* is a significant element. We do not here have an identity of both *time* and *destination* as in Olson v. Trinity Lodge, 226 Minn. 141, 32 N. W. (2d) 255. Also, the making of a hair-

dressing appointment was in no manner incidental to her work as a cook; but in the Trinity Lodge case the act of the employe in going to his room to put away his mackinaw was in part preparatory to taking care of the basement furnace and was therefore *incidental* to his employment. Plaintiff here, unlike the employe in Simonson v. Knight, 174 Minn. 491, 219 N. W. 869, had not put aside her own independent purpose when she was injured. Her employment, which was not the cause of her appearance at the cafe an hour earlier, cannot be said to have been a significant factor in exposing her to the injury. See, Breimhorst v. Beckman, 227 Minn. 409, 421, 35 N. W. (2d) 719, 728. Whether she would have slipped and fallen if she had entered the cafe an hour later is purely speculative. In the light of all the circumstances, we cannot say that the evidence as a matter of law required a finding that plaintiff's accident arose out of and in the course of her employment. We find no error.

▆▆▆▆ A motion for judgment *non obstante*, whether based on negligence, contributory negligence, or assumption of risk, accepts the view of the evidence most favorable to the verdict. See, Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213. We find no error in the denial of defendants' motion on these grounds. Upon the evidence as a whole, the jury could reasonably find that defendants were negligent. Aside from the express admission in defendants' answer that the portion of the cafe floor where plaintiff fell was wet from rain, we have plaintiff's testimony that rain came in through the screen. The inner door was open. The linoleum near the door was worn clear through. The jury could reasonably infer that with a screen door located only 38 inches from an inner door which stood open, and with a rain of several hours' duration, water would be brought in not only by the wet shoes and clothing of pedestrians, but also by any little gust of wind. Water, once brought in, was bound to collect and remain in the depression caused by a wearing through of the linoleum. Not only the linoleum, but the worn spot had, only on the preceding Saturday, been covered with a preparation called plastic wax, which made the surface shiny, glossy, and

waterproof. That the water remained in that spot is attested by the fact that plaintiff's uniform became "all wet" when she fell. In addition, the new preparation called plastic wax, which had never been used before, not only made the floor especially shiny and glossy, but also very slippery when wet. No witness knew whether this preparation contained wax or not, but its unusually slippery properties when wet were not seriously disputed. In fact, one of defendants admitted upon cross-examination that it was used only that one time and its use thereafter was discontinued because "it made the floor a little too slippery." Naturally, the unevenness of the floor surface, resulting from a wearing through of the linoleum, made the combination of water with the new floor preparation, especially where plaintiff fell, all the more hazardous. Negligence could reasonably be inferred from this combination of circumstances—leaving the entrance door open during a rain when immediately inside the door the linoleum was worn through to form a depression for the collection of water; failure to repair the floor covering; and the use of a new floor preparation which became very slippery when wet. A combination of acts of commission or omission which together result in or create a condition which a person in the exercise of reasonable care ought reasonably to anticipate is liable to result in injury to others constitutes negligence. See, Taylor v. Northern States Power Co. 196 Minn. 22, 264 N. W. 139; Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213. This is a much stronger case on the facts than the Taylor case, *supra*, and is readily distinguishable from Dunham v. Hubert W. White, Inc. 203 Minn. 82, 279 N. W. 839, which involved a well-maintained and level floor surface that was dry and was covered with a standard wax, or McIntyre v. Holtman, 193 Minn. 439, 258 N. W. 832, where a floor had been *oiled* and a thin film of oil had been permitted to remain on its surface.

The evidence furnishes no basis for a finding that plaintiff was guilty of contributory negligence as a matter of law. It is true that she was thoroughly familiar with the premises; but, on the other hand, she had had no prior experience with the effect of water

on the linoleum after it had been coated with the new preparation called plastic wax. The only time plastic wax had been applied was a few days before. The jury could reasonably believe plaintiff's testimony that the unusually shiny and glossy finish imparted by this floor finish made it difficult to see the water. Plaintiff had no reason to anticipate that plastic wax when combined with water would produce a very slippery floor surface.

■ Defendants in their answer alleged that the injuries sustained by plaintiff "were due to conditions open, obvious, and assumed by plaintiff * * *." Whether we regard defendants' allegation of assumption of risk by plaintiff as merely a phase of the defense of contributory negligence, or, as a separate and distinct defense based on an alleged intentional choice or willingness by plaintiff to encounter a condition which she appreciated and knew was fraught with danger (see, Schrader v. Kriesel, 232 Minn. 238, 45 N. W. [2d] 395), the evidence here, for the same reasons which indicate that there was an absence of contributory negligence, furnishes no basis for a finding of an assumption of risk by plaintiff as a matter of law.

■ Defendants offered in evidence a written statement signed by plaintiff which had been obtained from her within 30 days after the accident. The trial court sustained plaintiff's objection to the admission of this statement on the sole ground that no copy thereof had been given to plaintiff within 30 days after the same was procured as required by § 602.01, which reads:

"Any statement secured from an injured person at any time within 30 days after such injuries were sustained shall be presumably fraudulent in the trial of any action for damages for injuries sustained by such person or for the death of such person as the result of such injuries. *No statement can be used as evidence in any court unless the party so obtaining the statement shall give to such injured person a copy thereof within 30 days after the same was made.*" (Italics supplied.)

Defendants contend that the provision contained in the last

sentence thereof is unconstitutional. The statutory requirement that a copy of a written statement obtained from, and signed by, an injured person must be given to the injured person within 30 days after the statement was procured, as a prerequisite to the admissibility of such statement in evidence, is not unconstitutional as imposing an unreasonable, oppressive, or arbitrary requirement which denies the equal protection of the laws or gives to one party an unfair advantage over the other, or which in any way denies or violates the requirement of due process of law. The imposition of the simple requirement that a copy must be given to the injured person, in order to make the written statement admissible, is but a matter of evidentiary procedure and does not deprive a defendant of a reasonable opportunity to present his defense. See, Missouri ex rel. Hurwitz v. North, 271 U. S. 40, 46 S. Ct. 384, 70 L. ed. 818. Evidentiary rules may be changed from time to time as long as a reasonable opportunity to present all pertinent and material evidence, without the imposition of burdensome restrictions, is preserved. See, State v. Heldenbrand, 62 Neb. 136, 87 N. W. 25, 89 A. S. R. 743; 12 Am. Jur., Constitutional Law, § 621. Who can say that a defendant is deprived of a reasonable opportunity to present his evidentiary case, or that he is saddled with an unreasonable and burdensome restriction, by the simple procedural requirement that the injured party be given a copy of what he has signed. In the exercise of the police power, it is but a reasonable regulation for the prevention of fraud and for the protection of those who may be incapacitated from recent injuries. See, 11 Am. Jur., Constitutional Law, §§ 273, 275. This requirement is not only of protective benefit to the injured, but it is of material benefit to defendant in the presentation of his case, in that it provides him with a badge of good faith as to his dealings with the adverse party. As a rule of procedure, it contributes to equality of opportunity in the presentation of evidence without impairing any fundamental right of either party.

■ Whether the trial court erred in denying defendants' motion—made after both parties had rested—to amend their answer, we

need not determine. If it was error, it was error without prejudice, in view of our conclusion that the trial court was right in holding that plaintiff's injuries did not arise out of or in the course of her employment. The amendment simply alleged that plaintiff was on the premises solely by reason of her employment and not as an invitee. If she was not there because of her employment, it follows that her statement that she went to the cafe to make an appointment, *and to visit and have coffee,* with her beautician must be accepted as true. In Minnesota, at least, one of the legitimate reasons for entering a restaurant is to have coffee with a friend. It is a part of the restaurant business for which business visitors are invited.

"A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them." Restatement, Torts, § 332.[4]

The order of the trial court is affirmed.

Affirmed.

---

[4]As to a purpose incidental to the business of defendants who operated the cafe in conjunction with the hotel, see Restatement, Torts, § 332, *comment d;* Klugherz v. C. M. & St. P. Ry. Co. 90 Minn. 17, 95 N. W. 586, 101 A. S. R. 384; 26 Minn. L. Rev. 573, 596.