*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0493**

David L. Henson
as Trustee for the Estate of Maxwell David Henson, et al.,
Appellants,

vs.

Uptown Drink, LLC, Defendant and Third Party Plaintiff,
Respondent,

vs.

Jason Alan Sunby, et al.,
Third Party Defendants.

**Filed December 21, 2015
Reversed and remanded
Chutich, Judge**

Hennepin County District Court
File Nos. 27-CV-12-10634;
27-CV-11-14843;
27-CV-13-4368

Michael R. Cashman, Nicholas A. Dolejsi, Zelle Hofmann Voelbel & Mason LLP, Minneapolis, Minnesota (for appellants)

Steven E. Tomsche, Erica A. Weber, Tomsche, Sonnesyn & Tomsche, P.A., Golden Valley, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Peterson, Judge; and Chutich, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellants, the estate and relatives of Maxwell David Henson, seek reversal of the district court's grant of summary judgment in favor of respondent Uptown Drink, LLC. They assert that the district court erred in concluding that their claims are barred by the exclusive-remedy provision of the Minnesota Workers' Compensation Act. Because Maxwell David Henson's injury and subsequent death did not arise out of and in the course of his employment, the workers' compensation act and its exclusive-remedy provision do not foreclose appellants' claims. We therefore reverse and remand.

## FACTS

This case arises out of the tragic death of Henson, who was fatally injured when he tried to aid the general manager of respondent Uptown Drink, LLC (Drink) in subduing and ejecting an aggressive patron. Appellants, collectively the trustee of Henson's estate and other relatives, asserted claims against Drink. The estate sued Drink for wrongful-death, alleging that Drink was negligent in removing the unruly patrons and for failing to have security personnel on duty. Henson's relatives also brought dram-shop claims, asserting that Drink illegally sold alcohol to the two unruly men. Drink moved for summary judgment, contending that the Minnesota Workers' Compensation Act (the act) provided appellants' sole remedy.

In November 2012, the district court referred the matter to the office of administrative hearings for a determination of whether Henson's injuries arose out of and in the course of employment. *See* Minn. Stat. § 176.301, subd. 1 (2014) (providing that if

"a workers' compensation issue is present in the district court action, the court may . . . refer the matter . . . for assignment to a compensation judge"). The workers' compensation judge held an evidentiary hearing and found that Henson's injuries arose out of and in the course of employment and that the workers' compensation act therefore applied. The parties do not dispute the facts as found by the workers' compensation judge, so we adopt those findings in our decision.

The key, undisputed facts are as follows. Drink hired Henson as a food runner. Henson's primary responsibility was to deliver prepared-food orders to customers. He also performed other tasks, such as shoveling snow and sweeping floors, especially when business was slow. If business was too slow, Drink's general manager would send Henson home. Drink originally hired Henson at $7.25 per hour but later raised his wage to $7.75 per hour.

On Wednesday, March 23, 2011, Henson clocked in at 3:40 p.m. and, because of slow business, his manager told him to clock out early, which Henson did at 9:03 p.m. Henson stayed at Drink and ordered a half-priced meal along with an undiscounted beer. Per company policy, Henson took off his uniform and ate in the game room. At some point after Henson clocked out, the bartender on duty asked Henson to fix a beer tap, and he complied. Later, Henson moved a chair back to its spot at a table.

Around 9:30 p.m., Drink's bartender and general manager attempted to remove two unruly men from the premises. At 9:37 p.m., one of the men tried to punch the general manager. The bartender grabbed the man and forced him to the ground. The other man then attacked the general manager and attempted to choke him. Shortly thereafter, without

3

being asked, Henson and a bar patron came to help the bartender and general manager subdue the attackers.

Henson and the general manager moved one man toward the door, and the bartender, with the patron's assistance, brought the second man to the exit. As the general manager, Henson, and the unruly person approached the door, the three men fell down the stairs onto the sidewalk. Henson hit his head and was knocked unconscious. A Drink employee called an ambulance, and Henson was rushed to a hospital where he later died.

After receiving the factual findings of the workers' compensation judge and its legal determination that the workers' compensation act applied, Henson's estate and his relatives appealed the legal determination to the district court.[1] In July 2014, the district court affirmed the decision. Appellants sought to appeal the November 2012 and July 2014 orders so they moved for entry of a final judgment under Minnesota Rule of Civil Procedure 54.02.

On January 16, 2015, the district court granted Drink's motion for summary judgment and entered final judgment for Drink. This appeal follows.

## D E C I S I O N

The district court shall grant summary judgment if the pleadings, discovery, and affidavits show that no genuine issues of material fact exist and that a party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal from summary judgment,

---

[1] *See* Minn. Stat. § 176.301, subd. 1 (stating that the district court "may approve or disapprove a [workers' compensation judge's] decision in the same manner as it approves or disapproves the report of a referee"); Minn. Stat. § 484.70, subd. 7 (2014) (providing for district-court review of "[a]ll recommended orders and findings of a referee").

4

this court asks whether any genuine issues of material fact remain and whether the district court erred in applying the law. *In re Collier,* 726 N.W.2d 799, 803 (Minn. 2007). We consider the evidence in the light most favorable to the party against whom summary judgment was granted. *Gradjelick v. Hance,* 646 N.W.2d 225, 231 (Minn. 2002). "When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion that we review de novo." *Weston v. McWilliams & Assocs.,* 716 N.W.2d 634, 638 (Minn. 2006).

The workers' compensation act provides that "[e]very employer . . . is liable to pay compensation in every case of personal injury or death of an employee arising out of and in the course of employment . . . ." Minn. Stat. § 176.021, subd. 1 (2014). The "arising out of" and "in the course of" portions of the statute are "two distinct requirements." *Dykhoff v. Xcel Energy*, 840 N.W.2d 821, 826 (Minn. 2013) (quotation omitted). When an injury falls within the act, the benefits provided are the exclusive remedy. *Stengel v. East Side Beverage*, 690 N.W.2d 380, 383 (Minn. App. 2004), *review denied* (Minn. Feb. 23, 2005); *see* Minn. Stat. § 176.031 (2014) ("The liability of an employer prescribed by this chapter is exclusive and in the place of any other liability . . . ."). When the act provides the exclusive remedy, "the district courts have no jurisdiction." *Hodel v. Gundle Lining Constr. Corp.*, 572 N.W.2d 764, 765 (Minn. App. 1997).

In general, the employee bears the burden of establishing that an injury arises out of and in the course of employment. Minn. Stat. § 176.021, subd. 1. We agree with the workers' compensation judge that in this case, however, where Drink seeks to invoke the act's exclusive-remedy provision, Drink bears the burden of proof. *See Colonial Ins. Co.*

5

*of California v. Minnesota Assigned Risk Plan*, 457 N.W.2d 209, 210 (Minn. App. 1990) (noting that an insurer attempting to establish that an injury falls within the act bears the burden of proof), *review denied* (Minn. July 31, 1990).

**A.    Arising out of**

"[T]he phrase arising out of means that there must be some causal connection between the injury and the employment." *Dykhoff*, 840 N.W.2d at 826 (quotation omitted). When the employment "creates a special hazard from which the injury comes . . . there is that causal relation" that satisfies the "arising out of" requirement. *Id.* (quotation omitted).

Appellants argue that Drink has not shown that Henson's injury arose out of his employment and liken their case to *Dykhoff*. In *Dykhoff*, an employee was injured while walking to a meeting that her employer required her to attend. 840 N.W.2d at 823–24. As the employee walked to the meeting, which was located in the employer's downtown Minneapolis office, the employee slipped on the floor, fell, and dislocated her knee. *Id.* The supreme court held that the employee had not met the arising-out-of prong because she did not show that the floor was unusually slippery or otherwise hazardous and therefore failed to "prove that her workplace exposed her to a risk of injury that was increased over what she would face in her everyday life." *Id.* at 827. In coming to its conclusion, the court noted the workers' compensation judge's finding that the "shoes [the employee] chose to wear were an equally plausible explanation for [the employee's] fall." *Id.* at 827–28.

We agree with appellants that Drink has failed to establish a causal connection between Henson's injury and death and his employment. Drink needed to prove that its

workplace exposed Henson to a "special hazard," i.e. an increased risk of injury over what he would face in his everyday life. *See id.* at 826–27. It was not a hazard of Henson's workplace that led to his injury but a hazard that a bar patron may face on any given night. The two aggressive men posed the same risk to any patron who would choose to get involved to prevent severe injury to a fellow human being. Henson and a fellow patron exposed themselves to that risk, and Henson was injured and later died. We therefore conclude, as a matter of law, that Drink has failed to show that Henson's injury arose out of his employment. *See id.* at 827. Although this conclusion is dispositive, in the interest of thoroughness, we also examine the second statutory requirement, whether the injury occurred in the course of Henson's employment.

**B.     Course of Employment**

Appellants also contend that Henson's injury did not occur in the course of his employment with Drink. The "in the course of" requirement "refers to the time, place, and circumstances of the incident causing the injury." *Id.* at 826 (quotation omitted). An injury does not fall within the act unless the employee is "engaged in, on, or about the premises where the employee's services require the employee's presence as a part of that service at the time of the injury and during the hours of that service." Minn. Stat. § 176.011, subd. 16 (2014).

*1.     Time*

Appellants first argue that Henson's injury did not occur in the course of his employment because he acted as an off-duty volunteer, not an employee. An established principle of Minnesota law is that workers' compensation coverage extends to a

7

"reasonable time both before a person actually begins doing work on the premises and after the work day or shift is complete." *Foley v. Honeywell, Inc.*, 488 N.W.2d 268, 272 (Minn. 1992). The test is "whether the accident occurred at a time when the employee was being of service to the employer, which may or may not coincide with the period for which wages are paid." *Blattner v. Loyal Order of Moose*, 264 Minn. 79, 81, 117 N.W.2d 570, 572 (1962).

In *Blattner*, the employee was injured while leaving the employer's establishment an hour after his shift ended. *Id.* at 79–80, 117 N.W.2d at 571. The employee's shift ended at midnight and he had arranged a ride home from the bartender, so the employee waited inside the bar until 1:00 a.m. *Id.* at 80, 117 N.W.2d at 571. In affirming the award of workers' compensation benefits, the *Blattner* court emphasized that the injured employee had not stayed at the bar for personal purposes: "It is significant that the employee was not deviating from a normal route of departure when he was injured. He did not linger at the bar for personal pleasure but only to secure the transportation which was necessary to his work." *Id.* at 83, 117 N.W.2d at 573.[2]

---

[2] The Minnesota Supreme Court has repeatedly determined an employee's injury to have occurred in the course of employment when the employee was coming to or leaving work. *See, e.g.*, *Starrett v. Pier Foundry*, 488 N.W.2d 273, 274 (Minn. 1992) (affirming award of benefits where employee fell out of vehicle and broke his hip in employer's parking lot as he arrived at work); *Nelson v. City of Saint Paul*, 249 Minn. 53, 56, 81 N.W.2d 272, 276 (1957) ("[H]ours of service is to be given a liberal and reasonable construction so as to include during such hours a reasonable time for ingress after the employee . . . has come to a point which is not only immediately adjacent to the working premises but also within the range of hazards peculiarly associated with the employment."); *Olson v. Trinity Lodge*, 226 Minn. 141, 143, 145–46, 32 N.W.2d 255, 257–58 (1948) (holding that maintenance man's injury occurred in the course of employment when he slipped and fell on ice while entering the building where he performed maintenance in exchange for lodging).

The principle from *Blattner* was extended in *Sandmeyer v. City of Bemidji*, where an off-duty police officer was injured while taking target practice and later died. 281 Minn. 217, 219–20, 161 N.W.2d 318, 319–20 (1968). The *Sandmeyer* court affirmed the award of workers' compensation benefits, stressing that, even though the officer was off duty when the accident occurred, the department officially encouraged target practice and supplied its officers with the equipment to do so. *Id.* The court further reasoned that although "personal motives" played a part in the officer's activity, it was enough that the officer's "desire to serve the employer's purposes was the dominant motive." *Id.* at 221, 161 N.W.2d at 320–21. Also important to the *Sandmeyer* decision was the statutory directive in existence at the time to interpret Minnesota's workers' compensation statute broadly so as to effectuate its "remedial purpose" in compensating injured workers. *Id.* at 221, 161 N.W.2d at 320.

We find these cases distinguishable. Here, as opposed to the employee in *Blattner*, Henson "linger[ed] at the bar for personal pleasure": he stayed after work to enjoy a half-priced meal, a perk of his employment, and a beer, something he could not enjoy while on duty. *See Blattner*, 264 Minn. at 83, 117 N.W.2d at 573. Moreover, in contrast to the injured officer in *Sandmeyer*, Henson was not officially encouraged, or provided the means with which, to perform security duties. As the workers' compensation judge found, Henson's actions in helping to quell the violence "were probably . . . instinctual." Henson's "dominant motive" was to aid a fellow human being in a time of need, not to serve his employer. *See Sandmeyer*, 281 Minn. at 221, 161 N.W.2d at 320–21. In our view, Henson is less like the off-duty employee in *Blattner* and officer in *Sandmeyer* and

9

more like his fellow bar patron who offered help, without solicitation, in removing the two dangerous men.

Moreover, we agree with appellants' assertion that Minnesota law does not support the intermittent theory of employment relied on by the workers' compensation judge and the district court. The *Blattner* court based its decision, in large part, on the fact that the injured employee pursued no personal course of action before he was injured. *See Blattner*, 264 Minn. at 83, 117 N.W.2d at 573. Similarly, the officer injured in *Sandmeyer* was practicing an activity that his job required: being capable of shooting a firearm if necessary. *See* 281 Minn. at 219–20, 161 N.W.2d at 319–20. Here, Henson primarily pursued personal pleasure, eating a meal and drinking a beer at a bar, the pursuit of which was interrupted by his performance of two insignificant employment-related tasks, fixing a beer tap and straightening a chair. Nothing in the cases cited by Drink supports the notion that an off-duty employee's intermittent performance of work-related tasks transforms a subsequent injury into one covered by the act.

Rather, Henson is similar to the musicians in *Great Am. Indem. Co. v. Britton*, cited in *Blattner*. *See Blattner*, 264 Minn. at 82, 117 N.W.2d at 572 (citing *Great Am. Indem. Co. v. Britton*, 186 F. Supp. 938, 944 (D.D.C. 1960), *rev'd on other grounds sub nom.*, *Britton v. Great Am. Indem. Co.*, 290 F.2d 381 (D.C. Cir. 1961)). In that case, two musicians who played in a Washington, D.C. bar until 1:30 a.m. were shot and killed in the same bar at 2:00 a.m. *Great Am.*, 186 F. Supp. at 944. The district court found that the "deceased were not on the premises in the course of their employment," because the musicians had stopped playing at 1:30 a.m. and were paid, so their time at the bar after that

was personal.  *Id*.  Here, like the musicians in *Great Am.*, Henson clocked out shortly after 9:00 p.m. and was free to leave.  Henson decided for his personal pleasure to stay on his employer's premises to eat a meal and drink a beer; Henson's presence at Drink was for personal relaxation and was not "in the course of [his] employment."  *See id.*

We are also hesitant to further extend the reasoning from the Minnesota cases discussed above because of our legislature's directive that the act is no longer to be interpreted in a broad and remedial manner.  *Compare* Minn. Stat. § 176.001 (2014) (declaring that "cases shall be decided on their merits and that the common law rule of 'liberal construction' based on the supposed 'remedial' basis of workers' compensation legislation shall not apply in such cases") *with Sandmeyer*, 281 Minn. at 221, 161 N.W.2d at 320–21 (stating the previous rule "that the Workmen's Compensation Act is a remedial one which is to be given a broad and liberal construction"), *and Blattner*, 264 Minn. at 83–84, 117 N.W.2d at 573 (same).  The current directive requires us to construe the act in a "nondiscriminatory fashion."  *See O'Malley v. Ulland Bros*., 549 N.W.2d 889, 894 (Minn. 1996).  While the *Sandmeyer* and *Blattner* cases may have considered the concept of "in the course of employment" in light of the then-existing remedial purpose of awarding an injured worker benefits, given the legislature's specific direction, we will not do so here.

## 2. *Duties*

In addition, Henson's injury and death did not occur in the course of his employment because he exceeded the scope of his employment duties.  When an employee voluntarily "performs services outside the scope of his employment, [the employee] is not within the act while performing such services."  *Stepan v. J.C. Campbell Co.*, 228 Minn. 74, 77, 36

N.W.2d 401, 403 (1949). But when an employer directs or requests an employee "to perform some act outside the usual scope of his employment," an injury resulting from such action falls within the act. *Weidenbach v. Miller*, 237 Minn. 278, 292, 55 N.W.2d 289, 296 (1952). Under certain circumstances, an employee's response to an employer-related emergency may implicitly enlarge the scope of employment. *Stringer v. Minn. Vikings Football Club, LLC*, 705 N.W.2d 746, 761 (Minn. 2005).

*Weidenbach* is instructive. In *Weidenbach*, an employee and his boss were driving along the shore of Lake Minnetonka when they spotted a person who had broken through the ice "floundering" in the water. 237 Minn. at 279, 55 N.W.2d at 289–90. The employer said, "We better stop," or something to that effect. *Id.* at 280, 55 N.W.2d at 290. The employee stopped the vehicle and ran out onto the ice to help the person but broke through the ice himself and died. *Id.* at 280–81, 55 N.W.2d at 290. In affirming the denial of workers' compensation benefits, our supreme court emphasized that "there was no express direction to the employee to go to the aid of the third person. At best, the employer inquired of the employee whether they should not do so." *Id.* at 292–93, 55 N.W.2d at 297.

We accept what the workers' compensation judge found: Drink expected teamwork from its employees; Henson was the type of employee who followed that directive; and Henson received a raise the evening of the attack, in part, because of his willingness to help where and when he was needed. But to expect teamwork is far different than giving an off-duty food runner an express order to help in security matters. The workers' compensation judge also found that Henson had no duty to help with security and was not asked to respond to the attack; in fact, Henson did not help until one of the men attempted

to choke the manager, and his response was "probably almost instinctual." Just as the *Weidenbach* court found critical the lack of an express instruction for the deceased employee to do what he did, the absence of such an instruction here leads to the conclusion that Henson's actions fell outside his employment duties and therefore outside of the act. *See id.*

We also agree with appellants' argument that the scope of Henson's employment was not implicitly enlarged by the emergency doctrine. The leading emergency-doctrine case in Minnesota is *Stringer*, where two team trainers attempted to assist a Minnesota Vikings player who was suffering, and later died, from heatstroke. 705 N.W.2d at 750–52. The question before the supreme court was whether the trainers owed Stringer a personal duty. *Id.* at 753–54. To make that determination, the supreme court used the same analysis as it would to "determine whether an employee qualifies for workers' compensation benefits." *Id.* at 760.

The *Stringer* court stated that the scope of employment can be extended during "rescue activities, where the scope and course of an employee's employment may be impliedly extended in an emergency to include the performance of any act designed to save the life or property in which the employer has an interest." *Id.* at 761. In responding to the emergency situation of Stringer's heatstroke, the supreme court found the trainers "conformed with" their overall job duties, and so they owed Stringer no personal duty. *Id.* at 762–63. The supreme court highlighted that the trainers were on duty, were hired to "provide some level of care," and the purpose of their employment was "to protect the health and safety of the players." *Id.* at 762.

As appellants argue, *Stringer* is inapposite. In contrast to the on-duty trainers in *Stringer* who were hired to provide players general care, Henson clocked out over 30 minutes before the choking incident occurred, and his official job duties were entirely unrelated to providing security. *See id.* Simply put, *Stringer* cannot be interpreted to mean that the scope of employment automatically extends to all actions of an off-duty employee who voluntarily responds to an employer-related emergency. *See id.* at 760–63. Moreover, the underlying policy rationale driving the *Stringer* decision that "those who provide health care services" should be able to "respond to emergencies without unduly worrying about being subject to personal liability," is absent here. *See id.* at 762.

Although the parties do not cite to it, we address *Wilson v. Wizor*, a Kentucky case that the district court found persuasive. In that case, the day bartender's shift ended at 5:00 p.m., but he stayed behind the bar and continued serving drinks, supposedly to learn from the night bartender. *Wilson v. Wizor*, 544 S.W.2d 231, 232–33 (Ky. 1976). Later in the evening, a bar patron hit the night bartender with a club, and the day bartender sprayed mace in the patron's face. *Id.* As the patron's brother dragged him out of the bar, the patron shot and killed the day bartender. *Id.* Relying on the emergency doctrine, the Supreme Court of Kentucky stated that it was "obvious" that in spraying mace the day bartender "was acting in the interest of his employer," and ultimately held that the death arose out of and in the course of employment. *Id.* at 233. In so holding, the *Wilson* court stressed that "there is not a whit of evidence by any of the patrons of the bar that [the day bartender] was not working at the time of his death." *Id.*

14

*Wilson* is not on point. More than "a whit of evidence" demonstrates that Henson "was not working at the time of his death." *Id.* As opposed to the day bartender in *Wilson*, Henson did not continue to work in his official capacity and respond to an emergency in that capacity. Henson stayed at Drink to enjoy an after-work drink and meal. That pursuit was interrupted by fixing a beer tap for a coworker, pushing in a chair, and finally, without being asked, joining another bar patron in helping his boss and coworker with a dire security situation. *Wilson* fails to persuade us that Henson's injury and death occurred in the course of his employment.

In sum, we agree with appellants that Henson's injury and later death did not occur in the course of his employment. Like his fellow bar patron, Henson's admirable motivation was simply to help another human being who was embroiled in a serious physical struggle. Holding to the contrary would mark a reversion to the broad interpretation of the act that our legislature has expressly foreclosed. *See* Minn. Stat. § 176.001. Moreover, Drink hired Henson to run food to tables and not as a bouncer, and cannot now insist that Henson's unsolicited assistance, given when he was off duty, falls within the scope of his employment and is therefore covered by the act. *See Weidenbach*, 237 Minn. at 292–93, 55 N.W.2d at 297.

Because Drink has failed to prove as a matter of law that Henson's injury and death arose out of and in the course of employment, we conclude that the Minnesota Workers' Compensation Act does not apply to this case. *See* Minn. Stat. § 176.021, subd. 1. Accordingly, Drink is not entitled to summary judgment. Given our decision that the act

15

is inapplicable, we need not consider whether appellants' claims are barred by the act's exclusive-remedy provision. *See* Minn. Stat. § 176.031.

**Reversed and remanded.**