RUTH KINNEY PAGE AND OTHERS v. HARRY A. MURPHY AND ANOTHER.[1]

June 14, 1935.

No. 30,354.

[1]Reported in 261 N. W. 443.

*F. H. Durham* and *P. Benson,* for appellant.
*Leonard, Street & Deinard,* for respondents.

JULIUS J. OLSON, JUSTICE.

Defendant Harry A. Murphy appeals from an order denying his alternative motion for judgment notwithstanding or a new trial.

Action was brought to recover damages under the death by wrongful act statute by the executors of the estate of Rebecca Corliss Kinney. Plaintiffs prevailed as against Mr. Murphy, but the action against his wife was not pressed, so the verdict was rendered against him only.

Defendants' home is a new, modern, and commodious structure. A blueprint of the first floor (and that is the only one with which we are concerned) is attached to the record. From this it appears that as one enters the building there is a front center hall with the living room to the right and dining room to the left thereof. To the rear of the hall mentioned is what is termed in the record the back hall, ten feet square. Within this space and in the corner opposite the basement stairway is an inclosed lavatory. The back hall is lighted by a fixture about in the center of the ceiling, and there is also a similar light in the ceiling of the lavatory. The lavatory door opens outwardly, and a short distance in front thereof is an arched opening to the basement stairway built of cement and covered with a rubber corrugated pad. There is no claim of any structural defect or lack of adequate lights.

On October 31, 1929, Mrs. Kinney, grandmother of defendant's wife, was visiting at his home. She came there during the forenoon, had lunch at noon, and visited with the family, including one

Mrs. Frazee, Mrs. Murphy's mother. She was invited to remain with the family and to partake with them of the evening meal. Defendants' four children, ranging in age from four to twelve years, and some children of neighbors, had been shooting beans all around the house and had been running in and out, as children do, especially on an occasion such as this, being the night of Halloween. The day had been wet, the weather drizzly. In the back hall it seems that the children, because they had been running in and out of the house, had caused the rubber tile floor to become wet. Here too is the place where the children had been most energetic in "shooting beans." Defendant Harry Murphy came to the house about five o'clock in the afternoon. He, his wife, and the grandmother gathered in the living room. When dinner was announced defendant went to the lavatory adjacent to the back hall to wash his hands and did so. The grandmother intended to go to the lavatory upstairs for the same purpose, but Mrs. Murphy suggested that this was not necessary and that the lavatory on the first floor could be used. She conducted the old lady thereto and turned on the light. As the old lady came out of the lavatory to join the family, she slipped at or near the basement stairway and fell to the basement floor below, receiving injuries from which she later died. Mrs. Murphy testified that when she and her husband ran downstairs to where the old lady was lying she said she had slipped on the beans. She was a woman past 80 years of age but possessed of an exceptionally alert mind and had all the mental and physical faculties that one much younger than she would be glad to have.

A number of assignments of error are presented for review. We shall consider but one, whether defendant failed to exercise the degree of care which persons of ordinary prudence usually exercise under the same or similar circumstances. The court submitted to the jury as a fact issue whether defendant in permitting the rear hall to become wet and strewn with beans and not warning the old lady of this condition had failed to exercise the care of the ordinarily prudent person. It was and is urged in behalf of plaintiffs that because the grandmother had reached the age of 80 years

and because defendant knew that the children had been shooting beans and had been running in and out of the house so as to make the back hall wet and slippery, that thereby defendant "permitted a dangerous condition to be created on his premises" and that he was negligent in failing to warn her of the *"danger which he knew lurked in that back hall."* (The words in italics are taken from the court's charge.) Counsel for plaintiffs adroitly and ingeniously argue that while a father is not liable for his children's torts "without some direct or indirect participation on his part," he is nevertheless "bound to use all reasonable effort to restrain them from conduct that imperils others when he knows what they are doing." And, further, "that liability may arise through failure to restrain children from the pursuit of any acts dangerous to others and known to the parent."

We have no quarrel with the cases to which counsel refer (Hoverson v. Noker, 60 Wis. 511, 19 N. W. 382, 50 Am. R. 381, and Ryley v. Lafferty (D. C.) 45 F. (2d) 641, 642), but the trouble is that the facts in those cases are not at all similar to those presented here. Thus we find that in the Hoverson case [60 Wis. 513] "the father permitted his young sons to shout, use abusive language, and discharge firearms at persons who were passing along the highway in front of his house," thereby frightening plaintiffs' horses while driving to church and causing them to become unmanageable so "that they jumped suddenly forward and threw Sarah Hoverson out of the seat and injured her." Upon these facts the court properly came to the conclusion that [60 Wis. 514]: "If a parent permits his very young children to become a source of damage to those who pass the highway in front of his house, he is as much liable for the injury as though he permitted them to erect some frightful or dangerous object near the highway which would frighten passing teams; and in such case he cannot screen himself by saying that he did not in words order the erection to be made."

In the Ryley case [45 F. (2d) 641, 642] the court said (regarding the liability of parents for the torts of their minor son whom they knew to be habitually guilty of "inveigling smaller boys into secluded places and there beating, maiming, and punishing them; that

defendant parents at time in question knew of such vicious habit and disposition; * * * that defendant father encouraged his son in such conduct * * *") : "Under such circumstances as alleged the child's tort was committed with the parents' knowledge and implied acquiescence, and such knowledge and consent may be expressed or implied, rendering the parents liable without proof of their actual knowledge of the tort sued upon. Having full knowledge of their child's habits, traits, and vicious disposition, and encouraging him in the manner charged to continue such acts, would constitute assent and participation on the part of the parents in the tort alleged, and, if so, it would be regarded as negligence upon the parents' part."

The bean shooters here employed cannot be classed as instrumentalities likely to imperil others, nor does it seem to us that these little children by blowing beans through a tube can be said to have engaged in "acts dangerous to others." We think this thoroughly capable and energetic old lady would have resented a rule of liability such as now sought to be enforced by her executors. She came to defendants' home to enjoy her granddaughter's company and that of her great grandchildren. Apparently she had no difficulty going to the washroom before the light was turned on therein. Returning therefrom she suffered this unfortunate accident. That defendant and his wife took this matter keenly to heart is obvious to anyone reading this record. But to fasten liability upon a householder under these circumstances leads to a rule of conduct that makes the owner of the home liable as an insurer. The doctrine of "ordinary care under the circumstances" should not be stretched to such unreasonable limits as is here sought. A home without children is usually a very lonesome and forlorn place. To the old grandmother it would indeed be such were she not afforded the pleasure and companionship that these children lent thereto. We have here the picture of a modern and commodious home with the usual conveniences pertaining thereto. These children played, properly enough, we think, in the fashion that children usually do. There can be no doubt that the old grandmother knew what was going on. Everybody in the household knew, and what grand-

mother as capable as she would not? If she had stumbled against a kiddie car, slipped upon a baby's rattle, or upon a marble or any of the other·many kinds of playthings commonly found in homes where there are children, the same result might easily have obtained. The rule of conduct sought to be applied by plaintiffs is unreasonably harsh and wholly unnecessary. It would virtually mean that the average householder must either not have children or, if so fortunate as to have them, that playthings be forbidden or kept away from the rooms used by their elders. So to construe "ordinary care" is something to which we cannot subscribe. Nor has diligence of counsel brought forth any case of similar facts sustaining that view. The home owner may not be held liable in damages for permitting his children to play in his own home with such common and obviously harmless playthings as bean shooters. It is difficult to imagine what playthings one could furnish and provide for his children and escape liability if the standard of care is to be as plaintiffs claim. If "shooting beans" by children on Halloween night is to be made the basis for negligence actions, we are rapidly approaching the day when every parent must carry liability insurance to protect himself and thereby place "bean shooters" on a plane with automobiles.

We have no case in this state directly in point or parallel to the facts in the instant case. As a matter of fact there are very few cases in the books involving actions between a social guest in a home and the owner thereof as host. An interesting and instructive case is that of Greenfield v. Miller, 173 Wis. 184, 180 N. W. 834, 836, 12 A. L. R. 982. There defendant had invited plaintiff and her husband to spend New Year's eve and New Year's day at his newly finished home. The floors were highly polished and very slippery. Because thereof, plaintiff, while walking through the house, slipped on a small Oriental rug and sustained injuries. The basis for her claim to recovery was that defendant well knew of the highly polished and slippery condition of the floors; that he failed in his duty to inform or warn plaintiff of this condition; that it was his duty to have secured or fastened the rug so that it would not slip. The court said [173 Wis. 188]:

"It will be seen that in the cases of invitor and invitee there must be some benefit to the invitor in order to render him liable for failure to exercise ordinary care; there must be some mutuality of interest; and if the interest be only such as concerns the person entering, then he is but a mere licensee and there is no implied invitation. But the legal distinction between implied invitor and invitee and a mere licensor and licensee is quite well marked in the decisions, the general rule being that there is no liability on the part of the licensor for injury sustained by those coming on his premises as mere licensees, unless there is something on the premises in the nature of a trap which fact proximately caused the injury, or the licensor was guilty of active negligence."

And the court came to the following conclusion [173 Wis. 191]:

"It follows, therefore, that the purely social relationship in the case at bar raised no duty on the part of the host to exercise care or make the premises more safe, and that the relationship of host and guest, under the circumstances, was equivalent to the legal relationship of licensor and licensee and not equivalent to the legal relationship of invitor and invitee."

In a more recent decision and one wherein prior cases on this phase of the law are cited and reviewed, the Massachusetts supreme court in Comeau v. Comeau, 285 Mass. 578, 580, 582, 189 N. E. 588, 589, 92 A. L. R. 1002, said:

"There are several well considered decisions in courts of other jurisdictions reaching the conclusion that, where a guest is invited to come upon the premises of his host for social or benevolent purposes, the relation created is not that of invitee and invitor in a business sense but that of licensee or licensor. In such circumstances the host as licensor is held to be under no liability unless the proximate cause of injury to the guest is something in the nature of a trap or active negligence. Greenfield v. Miller, 173 Wis. 184, 180 N. W. 834, 12 A. L. R. 982; Mitchell v. Raymond, 181 Wis. 591, 599, 195 N. W. 855; Morril v. Morril, 104 N. J. L. 557, 142 A. 337, 60 A. L. R. 102; Pearson v. Mallory Steamship Co.

(C. C. A.) 278 F. 175. So far as we are aware there are no decisions to the contrary. * * *

"The principle to be deduced from our own decisions and those of other jurisdictions, and resting upon sound reason as well as upon authority, in our opinion may be stated as follows: A guest enjoying by invitation unrecompensed hospitality at the house of another must be presumed to accept such generous entertainment with an understanding that he accommodates himself to the conditions of his host. He cannot ask for better things than the latter possesses. It is difficult to import into such relationship a duty on the part of the host to make improvements or reconstructions because thereby his home may be more convenient or more safe for those accepting his gratuitous hospitality. The guest must accept the premises as he finds them."

See also Brenham's Admr. v. Buckley, 158 Ky. 848, 166 S. W. 618, Ann. Cas. 1915D, 861; 12 A. L. R. 987; 60 A. L. R. 108; 92 A. L. R. 1005.

While not directly in point, yet of value as analogous to what we are here considering, is Clarine v. Addison, 182 Minn. 310, 234 N. W. 295, 296. There the father had furnished his minor son with a 22-caliber pistol. The boy was 19 years old when he came into possession of the weapon and had passed 20 when it became the instrument causing plaintiff's injury. In sustaining a directed verdict for the father this court said on appeal:

"A father who furnished him with the pistol cannot be held liable for an accidental shooting by his son in the absence of evidence that, because of youth, mental deficiency, recklessness, or other cause, it was unsafe to intrust the son with the weapon and that the father was chargeable with knowledge of that fact."

The order is reversed and judgment will be entered for defendant notwithstanding the verdict.

HOLT, JUSTICE (dissenting).

I think the evidence made defendant's negligence a question for the jury. The deceased was a guest of defendant and his wife. She

was of advanced years. Although she had been in the home during the greatest part of the day, the jury could conclude that most of the time had been spent upstairs; that she was not familiar with the halls and stairways of the home; that she knew little or nothing of the slippery character of the floor in the back hall adjacent to the stairway into which she fell or of the presence of the beans thereon. The testimony that might tend to show negligence of defendant comes wholly from him and his wife. He frankly says that the floor covering in the hall was more slippery than linoleum when wet; that he observed that it was wet; and that beans were scattered on the floor just prior to the deceased's being taken to the lavatory. His wife saw the same condition. Would the ordinarily careful person have either removed the danger or warned the deceased thereof? This should be determined by the usual fact finders and not by the court as a proposition of law. To me the home is no different in respect of the duty of care due a guest therein from the owner than that due an invited guest from the driver of an automobile. In some states the common law duty of ordinary care to a guest rider in a car has been modified or changed by statute so as to make the driver or owner liable only for gross or reckless negligence. In automobile cases, and I fail to see that a different rule should apply to a guest in a home and a guest in a car, this statement appears sound:

"We conceive the true rule to be that the gratuitous undertaker shall be mindful of the life and limb of his guest and shall not unreasonably expose her to additional peril. This would seem to be a sane, sound and workable rule, one consistent with established legal principles and just to both parties. It leaves the determination of the issue to the jury as a question of fact." Avery v. Thompson, 117 Me. 120, 128, 103 A. 4, 7, L. R. A. 1918D, 205, Ann. Cas. 1918E, 1122.

Roy v. Kirn, 208 Mich. 571, 175 N. W. 475, approves the statement of the principle announced by the Maine court. Comeau v. Comeau, 285 Mass. 578, 189 N. E. 588, 92 A. L. R. 1002, applies the gross negligence rule to a case of this sort, but concedes that if the

rule of ordinary care governed, the evidence there made a case for the jury. It was not as suggestive of negligence as in the case at bar. Morril v. Morril, 104 N. J. L. 557, 142 A. 337, 60 A. L. R. 102, was where a 13-year old boy, a guest at a home, was permitted to play in the back yard and in so doing ran against a defective latch to an outbuilding, thereby injuring his eye. The court there ruled, four members dissenting, that as a matter of law no reasonable person could anticipate that the defective latch might cause an injury and for that reason affirmed a directed verdict. It seems to me that case presented a picture wholly different from that before us. Greenfield v. Miller, 173 Wis. 184, 180 N. W. 834, 12 A. L. R. 982, is admittedly more in point. But it is submitted that the jury had a right to infer from the evidence here that defendant knew that the beans on the wet and slippery floor adjacent to an open cement stairway were a trap to an aged person unacquainted with the situation, and that ordinary care for her safety required him to remove the danger or at least to warn her of its presence. I therefore dissent.

DEVANEY, CHIEF JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Holt.

HILTON, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Holt.