Middleton, J.
The problem before the court is to determine the relationship existing and the duties owed as between the defendants and the plaintiff, Adrian Scheibel, who was upon defendants’ premises as a social guest by invitation. Considerable difficulty has been experienced by courts and text writers in classifying the relationships between the possessors of premises and those who for various reasons come upon the premises. It is obvious that the plaintiff in this case was not a trespasser. It is equally clear that he was not a business visitor. Was he a mere licensee or was he, being a social guest by invitation, one to whom duties were owed other than would be owed to a mere licensee? This court has not heretofore decided a case involving this precise question.
2 Restatement of the Law of Torts, Chapter 13, is devoted to a discussion of liability for condition and use of land. In Section 329 thereof the term, “trespasser,” is defined. In Section 330 appears the following definition of “licensee”.-
“A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor’s consent, whether given by invitation or permission.”
In Section 331, “gratuitous licensee” is defined as follows:
“A gratuitous licensee is any licensee other than a business visitor as defined in Section 332.” As comment concerning this definition the following then appears:
*312 “a. The phrase ‘gratuitous licensee’ includes three types of persons.
“ 1. A licensee whose presence upon the land is solely for the licensee’s own purposes, in which the possessor has no interest, either business or social, and to whom the privilege of entering is extended as a mere favor by express consent or by general or local custom.
“2. The members of the possessor’s household, except boarders or paying guests and servants, who, as stated in Section 332, Comments / and g are business visitors.
6 6 # # #
“3. Social guests who, in a sense, are persons temporarily adopted into the possessor’s family.”
The statement of the law set forth in Section 342 reads:
“A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he
“ (a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and
“(b) invites or permits them to enter or remain upon the land, without exercising reasonable care
“ (i) to make the condition reasonably safe, or
“ (ii) to warn them of the condition and the risk involved therein.”
The “comment” under the above-quoted statement contains the following:
“A possessor of land owes to a gratuitous licensee no duty to prepare a safe place for the licensee’s reception or to inspect the land to discover possible ox-even probable dangers.
“If the license is gratuitous, the privilege to enter is a gift and the licensee, as the recipient thereof, is *313 entitled to expect nothing more than a disclosure of the conditions which he will meet if he acts upon the license and enters, in so far as those conditions are known to the giver of the privilege.
“A member of the possessor’s family or his social guest is also entitled at most to knowledge of such dangerous conditions as the possessor knows.”
Thus it appears that even though the authors of the Eestatement classify social guests as gratuitous licensees they consider that the possessor of the premises is under a duty to exercise reasonable care to warn the guest of any condition involving an unreasonable risk concerning which the possessor has knowledge and which the possessor has reason to believe that the guest will not discover or realize the risk thereof.
3 Cooley on Torts (4 Ed.), Section 440, makes the following statement:
“It has been stated in a preceding section that one is under no obligation to keep his premises in safe condition for the visits of trespassers. On the other hand, when he expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.”
In Harper On Torts, Section 95, we find the following:
“ It is sometimes said that a possessor of land owes no duty to gratuitous licensees except not to wilfully harm them. This, of course, is not accurate. A possessor of land owes a duty to licensees of a definite legal character. The duty does not include ordinary risks incident to the condition of the premises. The possessor is not bound to employ care to protect such *314 persons coming on to Ms premises from tMs class of risks. With respect to such hazards, a licensee who comes on to another’s land for his own benefit and advantage must assume the risk and take the premises as he finds them. But he does not assume the risk of extraordinary, concealed perils against which he can not protect himself, and anything in the nature of a trap or hidden peril highly dangerous to life or limb, is a risk that comes within the duty of care imposed upon the possessor.”
Section 96, ibid., then follows with this comment:
“A social guest of the possessor of land is included in tMs class as a licensee, and the duty of the host toward his social guest pertains only to such risks which are within the duty owed to licensees. WMle the visit may be of ‘mutual’ advantage to the parties, the law here, as in contract law, does not regard the benefit or advantage incident to such social relations as sufficient basis for the imposition of affirmative legal obligations. Consequently, the host need only warn the guest of concealed hazards of which he has knowledge and which he realizes constitute unreasonable risks, and he must not be guilty of any misfeasance after his guest has come on to the premises.”
The author then proceeds in succeeding sections to define the term, “invitee,” as applying only when the interest wMch the invitee and invitor have in common is some-business interest. “Hence, the class of persons designated as invitees includes those who have come upon the land at the express or implied invitation of the possessor, for the purpose of transacting sqme business within the scope of the invitation. They are sometimes called ‘business visitors.’ ”
In 38 American Jurisprudence, 778, Section 117, the following statement appears:
“Social Guest. — Although there is not a great deal of authority upon the point, the rule appears to be *315 that the relation between host and guest is not that of invitor and invitee, but that of licensor and licensee, and that, in accord with the general principle which determines liability of an owner or occupant of premises to one who comes thereon as a mere licensee, the host is not liable for an injury sustained by the guest from some defect in the condition of the premises, except as the licensee is needlessly exposed to peril through the failure of the owner or occupant to warn him of danger, or by the active negligence of the owner or occupant. There is no duty on the part of the host to reconstruct or improve the premises for the purpose of making his house more convenient or more safe for those accepting his hospitality, gratuitously extended. The guest assumes the ordinary risks which attach to the premises. No exception is made to the rule because of the fact that the guest enters on the host’s express invitation to enjoy his hospitality. It is said that the owner or occupant must have a beneficial interest in a visit in order to impose upon him the duty of using reasonable care in having the premises in a safe condition for the visitor, and that the intangible advantages which arise from mere social contacts do not comprise such' an interest. A better reason for the rule is that a host merely offers his premises for enjoyment by his guests with the same security that the host and the members of his family who reside with him have. However, the rule is that a host who knows of a concealed danger upon the premises is guilty of negligence if he permits the guest, unwarned of the peril, to come in contact therewith, and he may be held liable to the guest for an injury thus sustained.” In 65 Corpus Juris Secundum, 489, Section 32 e, the following statement appears:
“It has been held that one who comes on premises by express invitation for purely social purposes, to enjoy hospitality as a guest of the owner or occupant, *316 or a guest who enters merely to receive a gratuitous favor from the owner or occupant, has the rig'hts only of a licensee.”
At page 525, Section 45, of the same volume, the following statement appears:
“The duty of exercising ordinary care for the safety of business visitors may require one who invites the public to his premises to purchase goods to take measures different from those required of one inviting others to his private residence * *
Annotations appear in the following volumes of A. L. B.: 12, page 987; 92, page 1005; 118, pages 425, 447; and 147, page 651.
The annotation in 92 A. L. B., 1005, contains the following significant statement:
‘ ‘ The statement in the annotation in 12 A. L. B., 9S7, which this annotation purports to supplement, that there is a great dearth of authority upon the subject in question, still holds good.
“A little additional authority found supports, however, the general rule previously stated that a guest in one’s home is not an invitee, though entering on the host’s express invitation to enjoy his hospitality, but is a bare licensee, and that the host is not liable for personal injuries sustained by the guest by reason of ordinary negligence of the host in the care of his home.”
The above-quoted comment follows a report of the case of Comeau v. Comeau, 285 Mass., 578, 189 N. E., 588, 92 A. L. R., 1002, decided March 27,1934. In that case plaintiff, as an invited guest and while passing from the street to the dwelling of the defendant, received injuries by reason of broken concrete in the passageway which had been in the same condition for many years through the negligence of the defendant in failing to keep it in safe condition. The decision was upon the question whether a social guest may recover *317 damages for injuries caused by ordinary negligence of tbe host or whether something more, termed for convenience gross negligence, must be established. The court leaned heavily upon English decisions beginning with the case of Southcote v. Stanley (1856), 1 Hurl. & N., 247, 156 Eng. Reprint, 1195, stating that those decisions “support the conclusion that an ordinary guest in a dwelling house has no greater rights with respect to the condition of the premises than a licensee.” After discussing what appeared to be all available decisions on the question, the court held that the words, “invitor” and “invitee,” are not pertinent to the underlying principles which govern the relation of guest and host, which relationship is not commercial, and that “a guest enjoying by invitation unrecompensed hospitality at the house of another must - be presumed to accept such generous entertainment with an understanding that he accommodates himself to the conditions of his host. He cannot ask for better things than the latter possesses. It is difficult to import into such relationship a duty on the part of the host to make improvements or reconstructions because thereby his home may be more convenient or more safe for those accepting his gratuitous hospitality. The guest must accept the premises as he finds them. ’ ’
The Comean case has been cited frequently as authority by courts considering “guest” cases.
The case of Statkunas v. L. Promboim & Son, Inc., 274 Mass., 515, 174 N. E., 919, decided in 1931, involved facts differing from those of the instant ease but required a discussion of the duties owed to one coming upon the premises of another. The court said:
“We take the law to be settled that one rightfully upon the premises of another for purposes in which the owner or occupant has no beneficial interest takes the premises as he finds them, and has no claim to any duty of the possessor to him with reference to their *318 condition beyond a duty not wantonly and wilfully to inflict injury upon him. One rightfully on the premises of another for purposes in which the possessor has a beneficial interest has a right to claim as a duty owed to him that reasonable care shall be used to furnish premises in a safe condition to admit the carrying out of the common purpose.”
The position of the Massachusetts court was reaffirmed in Colbert v. Ricker (1943), 314 Mass., 138, 49 N. E. (2d), 459, 147 A. L. R., 647, in which decision it is stated:
“The plaintiff was no more than a social guest of the defendant and the latter was not liable to the plaintiff for a defect upon the premises that was due to ordinary neglect. ’ ’
The New Jersey Court of Errors and Appeals considered the problem in the case of Morril v. Morril. 104 N. J. Law, 557, 142 A., 337, 60 A. L. R., 102, decided in 1928.- There a thirteen-year-old boy, while playing catch football with the other boys in the yard of defendant near the garage, was injured when the garage door blew open because of a defective latch as to which defect the defendant had full knowledge. Although the one injured was a minor, the court discussed and applied general principles applicable to adults. The court said:
‘‘ The rule of legal duty applicable when the injured party is a licensee, or was in this instance a guest of the landlord, cannot be extended beyond the well-settled rule of reasonable care to avoid creating any condition upon the premises which to one of ordinary prudence and foresight could be reasonably held to be a dangerous instrumentality for harm. ’ ’
The court then quotes with apparent approval the following statement from Thompson’s Commentaries on Negligence:
“ ‘Where one visits the private house of another *319 as a social guest the owner is bound to take the same care of him that he takes of himself, and the other members of his family, and no more. ’ ’ ’
In Lewis v. Dear (1938), 120 N. J. Law, 244, 198 A., 887, plaintiff while in defendant’s home as a social guest slipped on a polished floor and fell. The defendant’s motion for nonsuit was granted and the ruling affirmed. The court followed the decision in Morril v. Morril, 104 N. J. Law, 557, 142 A., 337, and also quoted with approval the following statement from 45 Corpus Juris, 794:
“It has been held that one who comes on premises by express invitation to enjoy hospitality as a guest of the owner or occupant, or a guest who enters merely to receive a gratuitous favor from the owner or occupant, has only the rights of a licensee and must take the property as he finds it. ’ ’
In Cosgrave v. Malstrom, 127 N. J. Law, 505, 23 A. (2d), 288, decided in 1941, the plaintiff and defendant were friends and neighbors and frequently exchanged visits. Mrs. Cosgrave, the plaintiff, came to defendant’s home at defendant’s invitation to inspect a “comforter” recently purchased. The defendant’s dog, which was tied upon a leash, caused her to fall while she was leaving defendant’s home and descending the back porch steps. The plaintiff contended that she was an invitee and within the application of the broad rule applying generally to invitees, namely, that the owner or occupier of lands who, by invitation, express or implied, induces persons to come upon the premises, is under the duty to exercise ordinary care to render the premises reasonably safe for the purposes embraced in the invitation. The Supreme Court held that the evidence established only that Mrs. Cosgrave was a visitor having the rights of a licensee and disapproved the trial court’s charge which was as follows: “ ‘If she was there as an invitee, then you must ask your *320 selves this question: Did Mrs. Malstrom fulfill that obligation that she owed to Mrs. Cosgrave ? What was that obligation? That her house provided a reasonably safe means of ingress and egress.’ ” The Supreme Court held that this instruction taken by itself placed the defendant under the absolute duty of providing a reasonably safe way and was not even a correct statement of the broad rule applicable to invitees in general, and said: “The duty is to use ordinary. * * * or reasonable * * * care to render the premises reasonably safe for the purposes embraced in the invitation. ’ ’
In Greenfield v. Miller, 173 Wis., 184, 180 N. W., 834, 12 A. L. R., 982, decided in 1921, the plaintiff, who was a guest in the home of the defendant, slipped on a small oriental rug and was injured. The court stated the theory of counsel for the plaintiff to be that the duty owing by the defendant was to render the premises reasonably safe.for the visit of his guests. In the opinion the court said:
“But the legal distinction between implied invitor and invitee and a mere licensor and licensee is quite well marked in the decisions, the general rule being that there is no liability on the part of the licensor for injury sustained by those coming on his premises as mere licensees, unless there is something on the premises in the nature of a trap which fact próxima fcely caused the injury, or the licensor was guilty of active negligence. ’ ’
The court then quoted from Bigelow oil Torts (8 Ed.), 160, 161, as follows:
“ ‘If the licensee is invited only as a guest or friendly visitor or for benevolence, he enters on no better footing, as far as the present question is concerned, than if he were a bare licensee; he cannot hold the owner or occupant to any duty of care or diligence beyond giving notice of any danger of which he is aware.’ ”
*321 The court then referred to the English cases, cited with apparent approval the Massachusetts decisions where the rule is that one who comes on an express invitation to enjoy hospitality as a guest must take the house as he finds it and that his right to recover for an injury growing out of dangers on the premises is that of a mere licensee, and said that the guest has no such relation to the host “as to create a duty to make the place where hospitality is tendered safer or better than it is.”
The court’s conclusion was “that the purely social relationship in the case at bar raised no duty on the part of the host to exercise care or make the premises more safe, and that the relationship of host and guest, under the circumstances, was equivalent to the legal relationship of licensor and licensee and not equivalent to the legal relationship of invitor and invitee.' ’
The rules announced in the above case were approved in Cleary v. Eckart (1926), 191 Wis., 114, 210 N. W., 267.
In Page v. Murphy. 194 Minn., 607, 261 N. W., 443, decided in 1935, action was brought by the executors of the estate of Rebecca Corliss Kinney to recover for her death which resulted from falling down the basement stairs in the defendant’s home. The decedent, who was the grandmother of defendant’s wife, was visiting at the home. Small children, members of the family, had been playing with beans on the rubber-tiled floor of the rear hall where the lavatory was located, from which hall the basement stair descended. It being a rainy day, the rubber-tiled floor had become wet. The grandmother, in returning from the lavatory, slipped on the wet floor on which some of the beans remained. Her fall to the basement and death resulted. The plaintiff claimed that the defendant had permitted a dangerous condition to be created on his premises and that he was negligent in failing to warn *322 the grandmother of that danger. The court' held that to fástén liability upon the householder under those circumstances would lead to a rule of conduct making the owner of the- home liable as an insurer and that the doctrine of “ordinary care under the circumstances” should not be stretched to such unreasonable limits. Judgment was entered for the defendant.
In Kalinowshi v. Young Women’s Christian Assn. (1943), 17 Wash. (2d), 380, 135 P. (2d), 852, the plaintiff was supervising a dance in the YWCA and was injured when she slipped on the lobby floor in coming from the' gymnasium. The court discussed at considerable length the distinction between an “invitee” and a “licensee” and the resulting duties and liabilities. The court said in part:
“We are of the opinion that the evidence in this case establishes that respondent was an invitee rather than a licensee. It is true that the fact of invitation alone is not sufficient to make one an invitee, as a licensee may be invited onto the premises purely as a social guest, and because there is no mutuality of benefit, in the business or commercial sense, the relationship of invitee, with its consequent legal duties, does not arise. See Comeau v. Comeau, 285 Mass., 578, 189 N. E., 588, 92 A. L. R., 1002.”
In Mitchell v. Legarsky (1948), 95 N. H., 214, 60 A. (2d), 136, plaintiff and defendant were sisters-in-law. Defendant invited plaintiff to her house to do some sewing for which she was not to be paid and it was established she was not an employee of defendant. Plaintiff fell down a flight of steps when she caught her toe in a torn piece of linoleum at the edge of the top stair. The trial court overruled defendant’s motions for nonsuit and a directed verdict made on the ground that the plaintiff was merely a gratuitous licensee. The Supreme Court said: *323 this case, the plaintiff was a gratuitous, licensee, or. hare licensee, toward whom the defendants owed .only a limited duty of care. # a possessor owes to a hare licensee only the duty to exercise reasonable care to disclose to him dangerous defects which.are known to him and likely to be undiscovered by the licensee. ’ ’ ’
*322 “We are of the opinion that, under the evidence in
*323 The defendant testified that the linoleum had been sticking up on the edge of the step for several days and she knew it would be a dangerous condition. On the basis of. that testimony the court held that it might be found that the defendant’s knowledge was such as to impose upon her a duty to disclose a dangerous situation to the plaintiff and consequently the motions of defendant for nonsuit and a directed verdict were properly denied.
In Long v. Joestlein (Maryland 1949), 66 A. (2d), 407, a domestic employee fell down a back stair leading from the second to the first floor. In discussing the duties and liabilities involved the court said:
“The general rule is well settled that an owner of land or buildings, who invites, employees or others to go upon his premises, owes to such persons a duty to exercise care to have his premises in a reasonably safe condition and to give warning of any latent or. concealed dangers. If an owner or occupant negligently allows ■ a dangerous condition to exist on his premises, and leads invitees into a dangerous trap or. exposes them to an unreasonable risk, and fails to give them warning of latent or concealed dangers, which are known to him but not to them, be is liable in damages to any injured persons, if they used ordinary care. But there is no duty upon the owner or occupant to warn an invitee of a dangerous condition which is obvious to a person of ordinary care and prudence. * * * . '
“* * * We realize that one who enters a store,' theatre, office building or hotel is entitled to expect that *324 his host will make far greater preparations to secure the safety of his patrons than a householder will make for his social or even his business visitors. One entering a private residence, even for purposes connected with the owner’s business, is entitled to expect only such preparation as a reasonably prudent householder makes for the reception of such visitors.”
Judgment for plaintiff in the trial court was reversed.
We find no decision by the court of last resort of either New York or Illinois dealing with the general subject of the duty owed by a host to a social guest. There are, however, reported decisions of inferior courts of those two states holding that a social guest is to be treated as a licensee. Since there is a marked dearth of authority on this subject we indicate the following citations for those interested: Biggs v. Bear (1943), 320 Ill. App., 597, 51 N. E. (2d), 799; Schmidt v. Langer (1948), 336 Ill. App., 158, 83 N. E, (2d), 34; Bugeja v. Butze (1941), 26 N. Y. Supp. (2d), 989; and Roth v. Prudential Life Ins. Co. (1943), 42 N. Y. Supp. (2d), 592.
The foregoing texts and decisions demonstrate that generally in the United States a social guest is considered a licensee and that the duties owred to the social guest by the host are not as great as those owed by the owner or occupant of premises to a business visitor. Much of the difficulty in determining the duties owed by a host to a social guest arises out of the effort to classify all persons upon the premises of another as either trespassers, licensees or invitees. There is no compelling necessity, in our judgment, for adhering strictly to such limited classifications. If a social guest is to be classified in Ohio as a licensee and is, therefore, entitled only to the protection of a licensee in accordance with the duties owed to a licensee as such duties are defined by Ohio decisions, then the *325 duty owed to him by the host would be very meager. It is unnecessary to discuss at length the decisions of this court which determine the duties owed to a licensee. A few citations suffice.
In Hannan, Admr., v. Ehrlich (1921), 102 Ohio St., 176, 185, 186, 131 N. E., 504, Chief Justice Marshall said:
“The authorities are in perfect harmony as to the duty owing to a licensee, and it may be generally (stated that a licensee takes his license subject to its attendant perils and risks, that the licensor owes him no duty except to refrain from wantonly or wilfully injuring him, and that he should exercise ordinary care after discovering him to be in peril. Iñclnded in theforegoing rule there should be the~"further statement that the licensee should not be exposed to hidden dangers, pitfalls or obstructions.”
In Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Potter (1925), 113 Ohio St., 591, 150 N, E., 44, where the duty owed a licensee on railroad property1 was considered, the court said:
‘ ‘ Such being his status, the overwhelming weight of authority in this state and elsewhere is to the effect that there is no legal duty owing on the part of a defendant to one who was not an employee and who had placed himself in a position of peril, as was done under the circumstances here related, except the duty to refrain from wilfully and wantonly injuring him and to use all reasonable care to avoid injuring him after discovering him in such position.”
In Stark County Agricultural Society v. Brenner, An Infant (1930), 122 Ohio St., 560, 571, 172 N. E., 659, it is stated in the opinion:
‘ ‘ The society and its officers and agents owe no duty to gratuitous licensees, except not to wilfully or wantonly injure them, and to avoid exposing them to known dangers.”
*326 In Hicks v. Village of Cortland (1930), 123 Ohio St., 114, 117, 174 N. E., 241, the court said in the per curiam opinion:
“It is doubtful whether, upon the facts proven, the relationship * # * could rise above that of a trespasser; but in no event could it rise higher than that of a licensee. Hence, the duty of the municipality * * * was not'higher than to abstain from intentionally or wilfully injuring him, and to warn him of hidden dangers of which it knew.”
In Soles, Admr., v. Ohio Edison Co. (1945), 144 Ohio St., 373, 59 N. E. (2d), 138, where the decedent entered the defendant’s grounds and was killed by contact with high voltage electric wires, the first paragraph of the syllabus reads:
“An occupier of land, either as lessee, tenant or by sufference, owes no duty to a trespasser or licensee upon such land except to refrain from wanton, wilful or reckless misconduct which is likely to injure him. ’ ’
In rendering the foregoing decisions and others which could be cited, it is manifest that the court did not have in mind a social guest and those decisions cannot be considered as defining the duties and liabilities of a host toward a social guest merely because a social guest has been almost universally classified as a licensee. See, also, Pittsburgh, Ft. W. & C. Ry. Co. v. Bingham, Admx., 29 Ohio St., 364, 23 Am. Rep., 751, and Railroad Co. v. Harvey, 77 Ohio St., 235, 83 N. E., 66, 122 Am. St. Rep., 503, 19 L. R. A. (N. S.), 1136.
On the other hand, there are numerous decisions of this court which deal with the duties owed to one who goes upon the premises of another for the transaction of business or by invitation connected with business transactions. The recognition of a duty owed to such business visitor greater than that owed to a licensee *327 is indicated by language used in S. S. Kresge Co. v. Fader, 116 Ohio St., 718, 158 N. E., 174. There the plaintiff went into defendant’s store during a rainstorm and slipped and fell in water which had accumulated on the floor. The court said at page 721:
‘ ‘ She went into the store as an invited shopper, with all the rights that any shopper has in entering any store, and the store owed her the same degree of care that all stores owe all patrons who enter; that is to say, the store owed her the duty to exercise ordinary care for her protection against injury while in the store.”
In Flury v. Central Publishing House of Reformed Church in the United States, 118 Ohio St., 154, 160 N. E., 679, the plaintiff, who was a business visitor or invitee on the defendant’s premises, opened a door and fell down an elevator shaft. It was stated in the opinion:
“While the fact that the plaintiff was upon the premises of the defendant upon invitation imposed upon the defendant the duty to have his premises in a reasonably safe condition, and to warn plaintiff of latent or concealed perils of which defendant knew, and entitled plaintiff to rely upon the performance of that duty by the defendant, yet that relationship did not entitle him to act in a wholly heedless manner, in total disregard of his own safety. He had a right to assume, and act upon the assumption, that the premises were in a reasonably safe condition, that the provisions of the ordinance and the state law with reference to elevators, elevator shafts, and elevator doors had been complied with, and that he would be warned of latent and hidden perils of which the defendant knew, but he was not thereby absolved from the duty of exercising for his own safety ordinary care and of employing the senses with which nature had provided him.”
*328 This recognition in Ohio of the duties and obligations owing to a business visitor is in harmony with the great weight of authority embodied in decisions from states where social guests classified as licensees are clearly distinguished from business visitors and where the rules and liabilities applicable to business visitors do not apply with respect to social guests as licensees. Illustrative cases so involving business visitors are: Alfrey Heading Co. v. Nichols (1919), 139 Ark., 462, 215 S. W., 712; Noyes v. Des Moines Club (1916), 178 Iowa, 815, 160 N. W., 215; Chicas v. Foley Bros. Grocery Co. (1925), 73 Mont., 575, 236 P., 361; Corbin v. Haws Refractories Co. (1923), 277 Pa., 126, 120 A., 811; Archer v. Blalock (1896), 97 Ga., 719, 25 S. E., 391; Hart v. Washington Park Club (1895), 157 Ill., 9, 41 N. E., 620.
A reasonable solution of the difficulty of forcing social guests into any one of the three molds commonly recognized, to wit, trespasser, licensee or invitee, is solved by ceasing such effort and merely considering and discussing social guests as social guests and by referring to the one owing the duty and obligation to the guest as the host. What then should be considered as the duties and liabilities existing between such parties? It is obvious that the host owes the guest the duty to, refrain from wilful or wanton misconduct which would reasonably be expected to result in injury to the guest. It is well established that a host is not an insurer of the safety of a guest while upon the premises of the host and by the great weight of authority there is no warranty' express or implied, on the part of the host that the premises to which the guest is invited by him are in safe condition. Liability of a host for injury to a social guest must be predicated upon negligence. Through the development of tort law the term, “invitee,” means a business visitor, that is, one rightfully on the premises of another for *329 purposes in which the possessor of the premises has a beneficial interest. A social guest is not in such sense an “invitee.” Although the host is not an insurer of the safety of the guest while upon the premises of the host, some duty short of that owed to a business, visitor is owed to the guest. That duty of the host, in our judgment, is to exercise ordinary care not to cause injury to his guest by any act of the host or by any activity carried on by the host while the guest is on the premises. Coupled with this is the duty of the host to warn the guest of any condition ofi, the premises known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition.
The instruction of the trial court to the jury in the instant case must be measured by these rules of conduct. This court has a sympathetic understanding of the difficulties of the trial judge in framing instructions applicable to this particular case, but we believe that the trial judge went too far and placed upon the host obligations which were too great and duties too onerous in character. The court’s charge says in part:
“The proprietor of premises who invites another thereon, assumes an obligation that the premises are in a reasonably safe condition, and for a breach of this obligation, with notice, actual or constructive, the owner of the premises is liable in damages to a person who is injured as a direct and proximate result of the premises not being in a reasonably safe condition and who himself is in the exercise of ordinary care.”
This charge, when analyzed, makes the host an insurer that the premises are reasonably safe.
In another clause of the charge the court states *330 that the proprietor of the premises is not an insurer and then adds, “but he impliedly warrants that they are safe for the purpose intended * * * and that they are free from such defects and conditions as are discoverable by the proprietor, by ordinary and visible means and examination.”
The philosophy underlying all the decisions with respect to host and guest relationships is that the host extends his hospitality to the guest and that the guest accepts hospitality. As hereinbefore indicated, many courts and authorities state that the guest must take the premises as he finds them. Others have said that the host is under no obligation to especially prepare the premises for the safety and convenience of the guest and still others' have said that the guest has no right to expect better conditions or greater safety than the host accords himself and his own family. The philosophy of all decisions which consider the host-guest relationship is inconsistent with a warranty. The charge as given quite closely defines the duties and obligations owed to a business visitor. As previously stated, we are not inclined to consider a social guest as either a licensee, as that term has been used in decisions of Ohio courts, or as an “invitee” in the sense of a business visitor. It is our conclusion, therefore, that the charge to the jury contains erroneous statements prejudicial to the defendant. It remains to determine whether the evidence was such as to warrant the court in submitting the case to the jury and whether the motion of the defendants for a directed verdict in their favor should have been sustained.
The defendants provided a paved walk from the front door to the driveway. In the absence of evidence to the contrary we assume that it was in safe condition. Such combination of paved walk and driveway as a means of .approach to a residence is so common that it is a matter of public knowledge. Can *331 It be held that the defendants failed to use reasonable care to avoid creating a condition which to one of reasonable prudence and foresight could be reasonably considered dangerous, simply because they provided a combination of driveway and paved walk as an approach instead of constructing a wall? directly from their door to the street? We believe not. Having provided a suitable and customary approach can the defendants be reasonably required to go further and fill all depressions and level all mounds in the front, yard so that someone choosing to cross the yard in the dark rather than walk up the driveway might not misstep and fall? If a host must so police his front yard must he, at sundown each day, gather up all wagons, scooters, croquet balls and other toys or be charged with negligence by a guest who might trip over one of them? We do not believe that a social guest can reasonably demand such care be taken by the host.
Was there a condition in this lawn, known to the hosts, which involved an unreasonable risk? There was a “saucer shaped” depression but it was not located in the walk which was provided and which, we believe, the hosts could reasonably assume would be used. The depression was out in the lawn and we do not believe that there was any invitation by the hosts to leave the paved walk and go across the lawn. That is what the plaintiff did. He reached the front door, then descended the steps to the paved walk, left the walk and proceeded across the lawn. Such conduct cannot be said to have been within the reasonable expectations of the hosts. It can hardly be said that the “saucer shaped” depression was a trap or a condition involving unreasonable risk. It had been in the lawn for several months. The hosts and their children had lived with it. There was no evidence that anyone had ever been injured by it. It was not, *332 in our judgment, such a condition as to require a warning by the hosts or the burning of flood lights to disclose it.
We do not believe that there was evidence of negligence on the part of the defendants to submit to the jury. The motion of the defendants for a directed verdict should have been sustained.
The judgment of the Court of Appeals is reversed and final judgment is rendered for the defendants.

Judgment reversed.

Stewart, Tart, Matthias and Hart, JJ., concur.
WeyPandt, C. J., and Zimmerman, J., dissent.