## DONALD L. MEYER v. DONALD MITCHELL AND ANOTHER.

80 N. W. (2d) 450.

January 4, 1957—No. 36,902.

398

*Thomas K. Scallen,* for appellant.
*Scholle & Schweiger,* for respondents.

KNUTSON, JUDGE.

Appeal from an order denying plaintiff's motion for a new trial.

Plaintiff, a young man 32 years of age, was employed early in January 1954 as a real estate salesman on a straight commission basis by Fox, Incorporated. Defendant Lenore Mitchell was the secretary and treasurer of Fox, Incorporated, and had charge of closing real estate transactions. On January 12, 1954, at about closing time, defendant Donald Mitchell, Lenore's husband, who was employed elsewhere, came to the office for the purpose of going home with his wife. One of the other salesmen intended to take the Mitchells home, but, since it was inconvenient for him to do so, plaintiff offered to take them home. Plaintiff, with Mr. and Mrs. Mitchell, left the office between 5:30 and 6 o'clock. It was then dusk or getting dark. When they reached defendants' home, which was only a few blocks from the office, plaintiff made a complimentary remark about the house. Lenore Mitchell thereupon asked him if he would like to come in and see the house. He said that he would, and they proceeded to enter the house.

The Mitchell home is on a slight hill raised somewhat higher than the driveway. There is a cement sidewalk from the house to the driveway, which was not being used at that time because the driveway had been lowered. Instead, they entered partly by a dirt path which connected with a cement walk going into the house. They had no difficulty in entering the house.

Mrs. Mitchell showed plaintiff through the house. Two "Highballs" were served plaintiff. Plaintiff testified that he discussed his previous real estate work with the Mitchells. There was no discussion of any business pertaining to his employment.

At about 6:15 or 6:30, plaintiff left defendants' house to go home. He testified that he usually had his dinner about 6 o'clock. Mrs. Mitchell told her husband to get a flashlight to assist plaintiff to his car. Plaintiff declined the help. According to Mitchell's testimony, plaintiff said, "There is no need of your showing me out. * * * It is light or bright as day," or words to that effect. The area traversed was lighted from lights which were on the porch and also from the bedroom. As plaintiff was walking on the dirt path he slipped and fell, fracturing his leg, for which injury he now seeks to recover. He testified that the path was icy and that there was snow on the ice where he fell.

The court submitted the case to the jury on the theory that plaintiff was a gratuitous licensee. The jury returned a verdict for defendants.

It is plaintiff's principal contention that he was a business invitee, or at least that the jury could find that such relationship existed, and that his right of recovery is based on the duty of defendants toward him as such.

█ The authorities are not in harmony as to the test to be applied in determining who is a business invitee. We have applied the rule adopted by Restatement, Torts, § 332, which reads:

"A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them."

While the so-called "economic benefit" theory adopted by Restatement has been criticized,[1] it has been applied by this court in several cases.[2]

Dean Prosser suggests the alternative theory that:

"* * * the basis of liability is not any economic benefit to the occupier, but a representation to be implied when he encourages others to enter to further a purpose of his own, that reasonable care has been exercised to make the place safe for those who come for that purpose."[3]

Whether one theory or the other is applied here, it seems clear that, to be a business invitee, a person must be on the occupier's premises for some purpose of the invitor that implies an assurance that the premises have been made safe for those who come for such purpose. Under either theory, a mere social visit is not enough.[4]

Plaintiff argues here that he became a business invitee because he, knowing that Mrs. Mitchell was a corporate officer and his superior, did not want to offend her; consequently that the invitation was in the nature of a business command which he could hardly refuse. He argues also that there was a benefit to Mrs. Mitchell in that, in viewing defendant's house, she gave him a valuable demonstration of how a house should be shown to a prospective customer and that they discussed his previous real estate experience. It has not been shown how these things would affect

---

[1]Prosser, *Business Visitors and Invitees*, 26 Minn. L. Rev. 573; Prosser, Torts (2 ed.) § 78; James, *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees*, 63 Yale L. J. 605, 612.

[2]Standafer v. First Nat. Bank, 243 Minn. 442, 68 N. W. (2d) 362; Zuercher v. Northern Jobbing Co. 243 Minn. 166, 66 N. W. (2d) 892; Yeager v. Chapman, 233 Minn. 1, 45 N. W. (2d) 776, 22 A. L. R. (2d) 1260.

[3]Prosser, Torts (2 ed.) § 78, p. 455.

[4]Page v. Murphy, 194 Minn. 607, 261 N. W. 443; Restatement, Torts, § 331, *comment a*(3) ; Prosser, Torts (2 ed.) § 77, p. 447; James, *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees*, 63 Yale L. J. 605, 611; see, also, Sanders v. Brown, 73 Ariz. 116, 238 P. (2d) 941; Aragona v. Parrella, 325 Mass. 583, 91 N. E. (2d) 778.

Donald Mitchell, who was not connected with the real estate business. Aside from that, the evidence that the invitation, either expressed or implied, was based on or connected with any purpose even faintly connected with the employer's business is entirely absent. If we were to adopt plaintiff's argument, it would mean that the employee would become a business invitee any time his employer invited him to his home for dinner or cocktails, even though the visit was purely social. Mere desire to be socially polite to an employer can hardly be sufficient to transform a gratuitous licensee into a business invitee. We think that the court correctly determined, under the facts in this case, that plaintiff's visit was purely social and that he was a gratuitous licensee.

■ Plaintiff contends that the court erred in refusing to allow him to testify to his motive or intent in going upon defendants' premises. During the course of the trial the following transpired:

"Q. And what was your purpose in going into the house at that time?

"Mr. Schweiger: I object to that, your Honor, as incompetent, irrelevant, and calling for a conclusion of the witness.

"The Court: Sustained.

\* \* \* \* \*

"Mr. Scallen: At this time, plaintiff offers to prove by the witness Donald L. Meyer that at the time he was invited into the premises of Mr. and Mrs. Mitchell he did so because Mrs. Mitchell was one of his superiors in the company that he had just started working for; that he felt he could not offend his superior at that company by not going in; that it was in effect something of a business necessity he had to do.

"Mr. Schweiger: I object to any offering of evidence pursuant to his offer of proof, your Honor, on the basis it is incompetent, irrelevant and immaterial, not binding upon these defendants.

"The Court: I take it none of this offer of proof was conversation?

"Mr. Scallen: No, your Honor.

"The Court: Sustained."

Ordinarily, where the motive or intention of a party is relevant to the issues involved in the case, it is admissible.[5] However, in this case, even if the evidence had been admitted, it would not establish the relationship of a business invitee. Nor would the secret motive of plaintiff, unknown to defendants, be admissible to establish such relationship under the circumstances. What error existed, if any, was not prejudicial. Harmless error is not grounds for a new trial. Rules of Civil Procedure, Rule 61.

■ Plaintiff had suffered another fracture prior to this injury, and as a result he walked with a slight limp. He testified that he had no trouble walking into the house. He assigns as error the court's failure to instruct the jury that, if defendants knew that plaintiff had a limp, such knowledge of plaintiff's physical condition should be taken into account in deciding whether defendants had knowledge of a condition involving an unreasonable risk to plaintiff. The court instructed the jury as to the duties of defendants toward plaintiff as a gratuitous licensee in accord with Restatement, Torts, § 342, which reads as follows:

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

"(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

"(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to warn them of the condition and the risk involved therein."

We are committed to this rule in our former decisions.[6] But, argues plaintiff, defendants knew of plaintiff's prior disability; therefore,

---

[5] 7 Dunnell, Dig. (3 ed.) § 3231.

[6] Page v. Murphy, 194 Minn. 607, 261 N. W. 443; Malmquist v. Leeds, 245 Minn. 130, 71 N. W. (2d) 863; see, also, Lynghaug v. Payte, 247 Minn. 186, 76 N. W. (2d) 660.

they must furnish a route safer than would be necessary for one not having such disability.

The argument is untenable for several reasons. In the first place, there is no showing that plaintiff's disability affected either his ability to walk or his ability to observe the dangers in the path he traversed. His own testimony is that he had no difficulty in going into the house. His doctor's testimony is that he had recovered fully from the previous fracture. He did not claim that he fell because of such disability or that it had anything to do with his slipping. We doubt also that the rules applicable to the care required of an occupier of land toward a gratuitous licensee can be applied one way for a man who limps and another way for a man who does not limp in the absence of a showing of any further disability than that. The court gave the correct rule of law. It was for the jury to apply it to the facts. We think that the instructions were sufficient in that respect.

■ Plaintiff urges us to discard the rule of Page v. Murphy, 194 Minn. 607, 261 N. W. 443, and in place of it to adopt a rule of stricter liability.[7] While the theory of stricter liability may have some merit, the rule we follow is not without merit, nor is it so lacking in merit as to justify discarding it for another rule unless our rule is clearly wrong. The great weight of authority is in accord with the rule we follow.[8] The cases are practically unanimous in disallowing recovery for slipping on ice or snow where nothing else is shown[9] and where a purely social guest is involved.[10] We see no reason for adopting a new rule under the facts in this case.

---

[7]Plaintiff relies for the most part on articles by Dean Prosser in 26 Minn. L. Rev. 573; Professor James in 14 NACCA L. J. 226; and Professor McCleary in 1 Mo. L. Rev. 45; see, also, Prosser, Torts (2 ed.) § 77, p. 448; James, *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees*, 63 Yale L. J. 605; Laube v. Stevenson, 137 Conn. 469, 78 A. (2d) 693, 25 A. L. R. (2d) 592.

[8]Annotation, 25 A. L. R. (2d) 598.

[9]Annotation, 25 A. L. R. (2d) 608.

[10]James, *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees*, 63 Yale L. J. 605, 611; Prosser, Torts (2 ed.) § 77, p. 447.

404

■ Finally, plaintiff contends that the court's instruction as to contributory negligence was inadequate because the court failed to instruct that such negligence, in order to bar recovery, must have been a substantial factor in causing the injury.[11] The court properly defined negligence, contributory negligence, and proximate cause in the language most frequently used. Usually that is sufficient. No objection was taken thereto and no request made for a more detailed instruction. Under these circumstances, it is too late to raise the question now, even if plaintiff would have been entitled to such instruction if he had seasonably requested it. We find no reversible error.

Affirmed.

[11]Plaintiff relies on Guile v. Greenberg, 192 Minn. 548, 257 N. W. 649; but, see, Seward v. Minneapolis St. Ry. Co. 222 Minn. 454, 25 N. W. (2d) 221, and Rivera v. Mandsager, 228 Minn. 227, 36 N. W. (2d) 700.